**Case No. 1:18-cv-04068-TWT**
**United States District Court for the Northern District of Georgia**
**Atlanta Division**

---

**Joseph H. Harman, Debtor**

---

**J. THOMAS MCAFEE, III, in his capacity as Trustee of the Marital Trust #2 Under the Will of James T. McAfee, Jr., Appellant**

**v.**

**NEIL C. GORDON, Trustee, and ARNALL GOLDEN GREGORY LLP, counsel for Trustee, Appellee.**

---

**Appeal from the Order of the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Approving Arnall Golden Gregory LLP's Final Application for Compensation**

---

# Brief of Appellees Neil C. Gordon and Arnall Golden Gregory LLP

---

Sean C. Kulka, Esq.
Theresa Y. Kananen, Esq.
Arnall Golden Gregory LLP
171 17th St. NW, Suite 2100
Atlanta, Georgia 30363
T. 404.873.8500 F. 404.873.8683
sean.kulka@agg.com; theresa.kananen@agg.com

*Counsel for Appellees*

## CORPORATE DISCLOSURE STATEMENT

Appellee Neil C. Gordon is an individual not subject to the corporate disclosure requirement of Bankr. R. App. P. 7.1. Similarly, Appellee Arnall Golden Gregory LLP is a limited liability partnership not subject to the disclosure requirement of Bankr. R. App. P. 8012. However, for the avoidance of doubt, Arnall Golden Gregory confirms that it has no parent corporation and that it is not owned in any part by a publicly traded company.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..... i

TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iv

JURISDICTIONAL STATEMENT ..... 1

ISSUES PRESENTED ..... 1

STATEMENT OF THE CASE ..... 1

- I. Introduction ..... 1
- II. Factual Background ..... 3
  - A. Initiation of the Bankruptcy Case ..... 4
  - B. The Adversary Proceeding ..... 5
  - C. McAfee's Challenges to the Harman Defendant Settlement of the Adversary Proceeding ..... 7
  - D. Compensation of the Trustee and AGG ..... 9

SUMMARY OF ARGUMENT ..... 12

LEGAL ARGUMENT ..... 14

- A. The Bankruptcy Court Applied the Correct Legal Standard in Evaluating the Final Fee Application ..... 14
  - 1. *The Bankruptcy Court applied the correct legal analysis* ..... 15
  - 2. *McAfee fails to identify any legal error* ..... 17
    - a. *The Bankruptcy Court properly applied the "results obtained" factor in evaluating the fee application* ..... 17
    - b. *The Trustee was not required to defer to McAfee, and the degree of his deference is legally irrelevant to the fee application* ..... 21
- B. The Record Supports the Bankruptcy Court's Factual Findings ..... 24

1. *The Bankruptcy Court's finding that the Trustee credibly testified as to why he did not retain McAfee's counsel in the Adversary Proceeding is supported by the record* ................................................ 25

2. *The Bankruptcy Court properly found that the settlement of the underlying Adversary Proceeding was appropriate.* ........................................................ 28

CONCLUSION ........................................................................................ 29

CERTIFICATE OF COMPLIANCE ........................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blanchard v. Bergeron*,
489 U.S. 87 (1989) ... 13

*Bonanni Ship Supply, Inc. v. United States*,
959 F.2d 1558 (11th Cir. 1992) ... 13

*In re Commercial Consortium of Cal.*,
135 B.R. 120 (C.D. Cal. 1991) ... 27

*In re Davis*,
No. 03 Civ 7962(LAK), 2004 WL 1336233 (S.D.N.Y. June 15, 2004) ... 29

*In re Edwards*,
510 B.R. 554 (S.D. Tex. 2014) ... 26

*In re Globe Mfg. Corp.*,
567 F.3d 1291 (11th Cir. 2009) ... 1

*Grant v. George Schumann Tire & Battery Co.*,
908 F.2d 874 (11th Cir. 1990) ... 13, 25, 26

*In re Hambrick*,
No. 08-66265, 2012 WL 10739279 (Bankr. N.D. Ga. Apr. 10, 2012) ... 20

*In re Harman*
508 B.R. 780 (Bankr. N.D. Ga. 2014) ... 6

*In re Harman*
520 B.R. 906 (Bankr. N.D. Ga. 2014) ... 6

*In re Harman*,
512 B.R. 321 (Bankr. N.D. Ga. 2014) ... 3, 4, 5

*In re Harman*,
529 B.R. 352 (Bankr. N.D. Ga. 2015) ... 6

*In re Horne*,
876 F.3d 1076 (11th Cir. 2017) ....................................................................23

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ....................................................................*passim*

*In re Justice Oaks II, Ltd.*,
898 F.2d 1544 (11th Cir. 1990) ....................................................................22

*In re Kristan*,
Nos. EP 08-041, 04-20328 JBH, 2008 WL 8664765 (B.A.P. 1st Cir. Dec. 15, 2008)....................................................................20

*Livecchi v. Gordon*,
544 B.R. 57 (W.D.N.Y. 2015)....................................................................14

*In re Marshall*,
No. 02-80496-RGM, 2010 WL 3959612 (Bankr. E.D. Va. Oct. 11, 2010) ....................................................................20, 21

*McMillan v. Joseph Decosimo & Co. (In re Das A. Bowden & Co.)*,
131 F.3d 1459 (11th Cir. 1997) ....................................................................26

*In re Memorex Telex Corporation*,
242 B.R. 826 (D. Del. 1999)....................................................................24

*Norman v. Housing Authority of City of Montgomery*,
836 F.2d 1292 (11th Cir. 1988) ....................................................................13, 27

*In re Westwood Cmty. Two Ass'n, Inc.*,
No. 05-13753, 2006 WL 940647 (11th Cir. Apr. 12, 2006)....................................................................24

*In re Woerner*,
783 F.3d 266 (5th Cir. 2015) ....................................................................18, 19

**Statutes**

11 U.S.C. § 327(a) ....................................................................4

11 U.S.C. § 327(e) ....................................................................24

11 U.S.C. § 330(a) ....................................................................*passim*

11 U.S.C. § 330(a)(1)....................................................................14, 15

**Other Authorities**

3 Collier on Bankruptcy ¶ 330.03[3] (Richard Levin & Henry Sommer eds., 16th ed. 2018) ....................19

Bankr. R. App. P. 8015(h) ....................29

Rule 8015 ....................29

## JURISDICTIONAL STATEMENT

Appellee agrees with the basis for jurisdiction set forth in Appellant's brief.

## ISSUES PRESENTED

1. Whether in evaluating the Final Fee Application, the Bankruptcy Court applied the correct legal standard in conducting its analysis under the factors set forth in 11 U.S.C. § 330(a) as supplemented by *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)? Legal conclusions of the Bankruptcy Court are reviewed *de novo. See In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009).

2. Whether in evaluating the Final Fee Application, the Bankruptcy Court committed clear error in assigning less weight to Appellant's testimony than Appellant believed appropriate? Factual findings of the Bankruptcy Court are reviewed for clear error. *Id.*

## STATEMENT OF THE CASE

### I. Introduction

In handling this Chapter 7 bankruptcy case, Trustee recovered over $1 million for the bankruptcy estate, and at the urging of debtor's largest creditor, McAfee, initiated and prosecuted an extraordinarily complex adversary proceeding that lasted over two years. The adversary proceeding concluded a five-day hearing to address McAfee's challenge to the propriety of the settlement the Trustee

reached. McAfee then mounted an extensive challenge of the Bankruptcy Court's approval of the settlement, forcing the Trustee to incur hundreds of thousands of dollars and spend another two years defending it through two unsuccessful appeals.

After the appeals, Trustee's counsel Arnall Golden Gregory LLP ("AGG") presented a final fee application, having not been paid since 2013. After a day-long evidentiary hearing on AGG's final fee application and McAfee's objection thereto, the Bankruptcy Court authorized AGG to be reimbursed $14,978.13 in expenses and paid $765,892.00 in fees, which AGG had discounted by approximately $186,000, in part to make a voluntary distribution to McAfee.

In a now familiar pattern, McAfee again challenges the Bankruptcy Court's order approving AGG's final fee application. In doing so, McAfee argues for the application of "legal principles" that find no mooring in the law, and takes issue with how the Bankruptcy Court weighed the evidence. Specifically, McAfee argues that the Trustee was required to defer to McAfee's wishes as the sole creditor in this case, and that because the Trustee did not wholly do so, it is unfair for the majority of the estate to be absorbed by administrative expenses.

These arguments are a series of red herrings. Although McAfee makes much of his alleged status as "sole creditor" (which he was not), the law prescribes the same analysis for the Bankruptcy Court's evaluation of a professional fee applications regardless of the number of creditors at issue. The degree of

deference shown to creditors simply is not one of the many factors to be considered in whether professionals should be paid. And although McAfee does not like how the Bankruptcy Court weighed the evidence, its findings are clearly supported by the record. Moreover, the linchpin of McAfee's argument—that this was a single creditor case in which the Trustee should have let McAfee run the show—is facially incorrect. There was another creditor in this bankruptcy case. And even if this were a single creditor case, the law does not require (and would in fact prohibit) that a Trustee suspend his professional judgment and accede to whatever a creditor might wish. The Bankruptcy Court applied the correct legal analysis in evaluating AGG's fee application, and as shown below, there is ample evidence to support each and every one of its findings. McAfee's arguments are meritless, and should be rejected.

## II. Factual Background

The history of this bankruptcy proceeding is long and complicated, with the major contributor to that fact being the adversary proceeding against the Debtor Joseph Harman, Debtor's wife, and related entities that the Trustee pursued at McAfee's urging. The Trustee's efforts, including the pursuit and settlement of that adversary proceeding, resulted in the recovery over $1 million for the bankruptcy estate. (R-40, 45.)

### A. Initiation of the Bankruptcy Case

On June 14, 2011, Joseph H. Harman ("Debtor" or "Harman") commenced Case No. 11-67522 by filing his voluntary petition for relief, under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Georgia ("Bankruptcy Court"). (R-3 at D.E. 1.)[1] Neil C. Gordon was appointed as the trustee ("Trustee"), and on September 9, 2011, he applied to the Bankruptcy Court to employ his law firm, AGG, as general bankruptcy counsel to the Trustee under 11 U.S.C. § 327(a). (R-5 at D.E. 26.) There was no objection to that retention application, and the Bankruptcy Court approved it. (R-5 at D.E. 28.)

Two creditors filed proofs of claim in Harman's bankruptcy case. Carolyn McAfee, as Executrix of the Estate of James McAfee ("McAfee"), filed the largest claim for $5,369,083.73 million (R-41), and Choice Hotels International, Inc. ("Choice Hotels") filed a claim for $464,286.55. (D.E. 9-2 at 14-16.)[2]

In examining the financial records in the bankruptcy case, Trustee learned that within ninety days of the Petition Date, McAfee had garnished $45,857.67

---

1 Pages R-1 through R-19 contain the docket of the underlying bankruptcy case. For the Court's convenience, we include pinpoint citations to the particular docket entries referenced when citing this portion of the record.

2 After filing their appellate brief, McAfee moved to supplement the record in this appeal, which supplement appears at Docket Entry 9-2.

(the "Preference") from bank accounts of the Debtor or accounts jointly held by the Debtor and his spouse, Linda J. Harman ("Mrs. Harman"). Thus, the Trustee filed a preference action against McAfee, and McAfee remitted that money to the Trustee. (R-7 at D.E. 56; R-39; T. 99:21-100:15).

**B. The Adversary Proceeding**

By far the biggest litigation in the bankruptcy case was the adversary proceeding the Trustee initiated against Mr. Harman and numerous other defendants on June 13, 2013 ("Adversary Proceeding"). (R-7 at D.E. 57.) McAfee urged the Trustee to pursue these claims, and the Trustee did so, although he believed (as later circumstances would bear out) that they were exceedingly complex. (T. 94:16-95:20.) The multi-count complaint (which was twice amended to both drop and add parties, and add additional claims) contained over twenty-causes of action against multiple defendants and described a multi-year scheme through which the Debtor had systematically abused the forms of certain businesses and trusts to hide his assets and effect fraudulent transfers.[3]

The defendants in the Adversary Proceeding responded to the Trustee's filing with a torrent of motion practice. The defendants filed multiple motions to

[3] The Trustee sued Debtor, Mrs. Harman, The Linda J. Harman Irrevocable Trust, J.H.H. Holdings Corporation, First Equities Partners, Inc., First Equities Partners II, Inc., and FCGI Associates, LLC (collectively, the "Harman Defendants"), and Shadrix Lane, P.C. The Trustee also sued First Concord, LP, but later dropped that party.

dismiss, which the Trustee defended, and on which he ultimately prevailed. *See In re Harman*, 512 B.R. 321 (Bankr. N.D. Ga. 2014); *In re Harman* 508 B.R. 780 (Bankr. N.D. Ga. 2014). There were also two motions for judgment on the pleadings, which the Trustee was largely successful in defending. *See In re Harman*, 529 B.R. 352 (Bankr. N.D. Ga. 2015); *In re Harman* 520 B.R. 906 (Bankr. N.D. Ga. 2014).

In January 2015, pursuant to court order, all the parties to the Adversary Proceeding and McAfee participated in an all-day mediation. (T. 98:15-17.) At the conclusion of the mediation, the Trustee reached a settlement with two defendants, in which McAfee also participated. On June 4, 2015, the Trustee filed a motion seeking Bankruptcy Court approval of that settlement, which motion was granted. (R-10 at D.E. 85-86.) However, the bulk of the claims in the Adversary Proceeding remained unsettled, and litigation proceeded with the Harman Defendants.

In June 2015, in the midst of a multi-day evidentiary hearing on a motion to compel filed by Trustee, the Trustee and the Harman Defendants agreed to a settlement in principal wherein the Harman Defendants agreed to pay the Debtor's bankruptcy estate $675,000 in exchange for a complete release from the Trustee. This settlement was memorialized by a written Settlement Agreement dated July 1, 2015 (the "Harman Defendant Settlement"), which the Trustee submitted to the

Bankruptcy Court for approval ("Harman Settlement Motion"). (R-11 at D.E. 92.) McAfee was not a party to the Harman Defendant Settlement.

### C. McAfee's Challenges to the Harman Defendant Settlement of the Adversary Proceeding

Disappointed with the amount of the Harman Defendant Settlement, McAfee fought to block its approval. On July 21, 2015, McAfee filed a Preliminary Objection and Request for Expedited Discovery and a Continuance (the "Settlement Objection"). (R-11 at D.E. 94.) The Bankruptcy Court held hearings on the Harman Settlement Motion and the Settlement Objection on July 28 and July 31, 2015. (R-11 at D.E. 95, 100.) Following those hearings, the Bankruptcy Court entered a Preliminary Order dated August 4, 2015 (the "Preliminary Order"), which concluded that three of the four factors for approving a compromise and settlement agreement in this Circuit favored approval of the settlement, but deferred ruling on the Harman Settlement Motion based on "paramount interest of the creditors" factor, and further authorized McAfee to take additional discovery. (R-12 at D.E. 101.) McAfee took that opportunity, engaging in extensive additional written discovery and depositions. (R-12 at 102, R-14 at D.E. 109-115.)

Following McAfee's discovery, the Bankruptcy Court held *another three days* of evidentiary hearings regarding the Harman Defendant Settlement on September 21, September 22, and October 7, 2015. (R-12 at D.E. 94-95; R-13 at D.E. 116-117.) On October 16, 2015, the Bankruptcy Court entered a Final Order

approving the Harman Defendant Settlement and the Harman Settlement Motion (the "Final Settlement Order"). (R-14 at D.E. 120.)

Despite being afforded multiple days of hearing time and additional discovery, McAfee still challenged the Final Settlement Order through a motion for reconsideration, which Chief Judge Mullins[4] denied. (R-14 at D.E. 125, 130.)

On December 28, 2015, McAfee filed a Notice of Appeal of the Final Settlement Order. After full briefing, on July 28, 2016, Judge Story entered an Order and Judgment ("District Court Order") affirming the Final Settlement Order. (R-15 at D.E. 142.) Still not satisfied, McAfee appealed the District Court Order to the Eleventh Circuit. After full briefing and a court-mandated mediation, on March 31 2017, a three judge panel of the Eleventh Circuit Court of Appeals issued an Opinion and entered a Judgment affirming the District Court Order. ("Eleventh Circuit Order") (R-16 at D.E. 145-146.) McAfee then filed a petition for panel rehearing before the Eleventh Circuit, which was denied on May 10, 2017. McAfee did not appeal the Eleventh Circuit Order to the United States Supreme Court, so the Bankruptcy Court's Final Settlement Order became final and non-appealable.

[4] McAfee filed the Motion for Reconsideration after Judge Murphy retired. Accordingly, Judge Mullins ruled on the Motion for Reconsideration.

### D. Compensation of the Trustee and AGG

Throughout five years of litigation, AGG filed only one fee application, and in fact, has not been paid for any services rendered to the Trustee in the last five and a half years. On November 13, 2013, AGG filed an interim fee application requesting fees and expenses incurred for the period of June 14, 2011 through August 31, 2013, and on December 23, 2013, the Bankruptcy Court entered an order which awarded AGG interim compensation in the total amount of $129,121.68. (R.8 at D.E. 60, 62.)

After McAfee exhausted her appeals of the Final Settlement Order, the Trustee filed his Final Report, which included Trustee's Application for Final Compensation (the "Trustee Application") and AGG's Second and Final Application for Compensation ("Final Fee Application"). In addition to AGG's interim compensation, the Final Fee Application sought allowance of fees in the amount of $765,892.40 (out of total fees of $952,389.00) and reimbursement of expenses in the amount of $14,978.13 for the period from September 1, 2013 through March 12, 2018.[5] (R-21-225.) In order to make a distribution to McAfee, AGG voluntarily agreed to forego $186,496.60 in fees. (R-48.) On May 22, 2018,

---

[5] AGG did not request fees for its time after March 12, 2018, including the substantial time spent responding to various of McAfee's further objections. (R-45.)

McAfee filed an Objection to the Final Fee Application as amended (the "Fee Objection").[6] (R.-17 at D.E. 167-168.)

On June 15, 2018, the Bankruptcy Court held a full-day evidentiary hearing on the Final Fee Application and the Fee Objection. (R-17 at D.E. 166.) During that hearing, both the Trustee and McAfee's long-time counsel testified. The Trustee testified, among other things, that throughout the case, he had reviewed his firm's bills monthly and had reduced billings to control costs to the estate. (T. 74:6-14, 99:6-11.) He further testified that both AGG's services and expenses were actual and necessary. (T. 116:11-117:1.) He also testified that AGG was seeking compensation at its historical rates, even though the law would allow them to seek compensation at current rates as recompense for the long delay in payment. (T. 100:5-8.) Critically, the Trustee testified that AGG had reduced its fees by $186,496.60 so that the estate could make a distribution to McAfee, returning the $45,857.67 preference that the Trustee had recovered from McAfee. (R-48; T. 111:13-112:3.) The Trustee also testified that the five-year delay in payment had hurt his colleagues financially and impeded his ability to recruit fellow partners to represent him in other matters. (T. 147:20-148:22.)

On cross-examination, McAfee's counsel grilled the Trustee on why he did not retain McAfee's counsel to handle the Adversary Proceeding, especially

6 Notably, McAfee did not object to the Trustee Application.

considering their long pursuit of the Harmans. (T. 146:9-25.) In response, the Trustee articulated three reasons for his refusal to appoint McAfee's attorneys as special counsel. First, McAfee's counsel's repeated reference to the claims to be brought in the Adversary Proceeding as a "slam dunk" led the Trustee to believe that McAfee's counsel did not understand their complexity. (T. 95:8-20, 101:9-19, 144:2-7, 145:15-21). Second, the Trustee believed that McAfee's separate pursuit of overlapping claims against the Harman Defendants created a conflict of interest, in that those claims would compete with those advanced by the bankruptcy estate. (T. 101:9-12, 144:4-10.) Third, the Trustee said he recognized a long-standing "blood feud" between the Harmans and the McAfees, and even recalled McAfee's counsel saying McAfee had pursued the Harmans for twelve years and would do so for twelve more. (T. 101:13-22, 103:4-13, 145:22-25). The Trustee believed that McAfee's dogged pursuit of decades' worth of litigation was inconsistent with the proper administration of a bankruptcy estate, and that McAfee's animosity toward Mr. Harman was inconsistent with the integrity needed for the bankruptcy process. (T. 103:6-7, 145:22-25, 227:24-229:9.)

McAfee's long-time counsel also testified, taking issue with the fact that McAfee (who was a non-party to the Adversary Proceeding) was apparently not informed of a higher settlement offer from the Harman Defendants made at the January 2015 mediation, which at the time, the Trustee rejected, opting to continue

pursuing discovery. (T. 210:3-19.) McAfee's counsel also complained that the Trustee should have deferred to McAfee in pursuing the Adversary Proceeding. (T. 196:4-7, 198:8-200:3.) However, when being cross-examined about one of his own emails, McAfee's counsel admitted that he knew from the outset that the Adversary Proceeding could bring about so many professional fees that McAfee, as creditor, might take nothing. (T. 223:7-225:13; D.E. 9-2 at 2.)

On August 10, 2018, the Bankruptcy Court entered an Order (the "Final Fee Order"), which, among other things, awarded AGG $765,892.40 in fees and the reimbursement of $14,978.13 in expenses. The Bankruptcy Court accepted the Trustee's testimony that he had found a small amount of fees had been inadvertently billed by the Trustee as attorney time, rather than Trustee time, and disallowed that amount. (R-330.) However, given the substantial discount AGG was already voluntarily taking on its fees, the Bankruptcy Court did not further reduce the award. On August 24, 2018, McAfee filed a Notice of Appeal from the Final Fee Order thereby initiating this appeal. (R-303-304.)

## SUMMARY OF ARGUMENT

The facts surrounding the underlying bankruptcy case and the Adversary Proceeding are complicated, but the issues presented in this appeal are not. The first question is, did the Bankruptcy Court apply the correct legal standard? The answer is yes. It analyzed the Final Fee Application under the factors set forth in

11 U.S.C. § 330(a) as supplemented by the twelve factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-720 (5th Cir. 1974) overturned on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989).[7] McAfee does not even attempt to argue that the Bankruptcy Court should have applied a different legal standard, and instead argues that under the circumstances of this case, the Bankruptcy Court should have placed greater, if not exclusive, weight on the "the amount involved and the results obtained" factor. There is **no support** in the law for this approach. It is facially inconsistent with the Congressional intent behind the 1978 and 1994 revisions to Section 330 of the Bankruptcy Code, which were primarily implemented to encourage skilled practitioners to participate in bankruptcy proceedings.

Because the Bankruptcy Court applied the correct legal standard, the only other question is whether the Bankruptcy Court committed clear error in its application of that legal standard to the evidence before it. The answer is no. The Bankruptcy Court properly determined that credible evidence supported the existence of the *Johnson* factors, and supported approval of the Final Fee Application. There has been no abuse of discretion, and the Final Fee Order should be affirmed. *See Bonanni Ship Supply, Inc. v. United States*, 959 F.2d

[7] *Johnson* has been adopted by the Eleventh Circuit in *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988) and *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874 (11th Cir. 1990).

1558, 1561 (11th Cir. 1992) (An appellate court may affirm the lower court "where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected" by the lower court).

## LEGAL ARGUMENT

"Bankruptcy courts enjoy wide discretion in determining reasonable fee awards, which…should not be disturbed by an appellate court absent a showing that it was abused…An abuse of discretion arises where (1) the bankruptcy judge fails to apply the proper legal standard or follows improper procedures in determining the fee award; or (2) bases an award on findings of fact that are clearly erroneous." *Livecchi v. Gordon*, 544 B.R. 57, 61 (W.D.N.Y. 2015). Neither occurred here.

### A. The Bankruptcy Court Applied the Correct Legal Standard in Evaluating the Final Fee Application

McAfee raises two purportedly legal challenges to the Final Fee Order. McAfee argues first that the Bankruptcy Court erred by finding that the "lack of an actual benefit" to creditors need not be considered (or at least that it is not the controlling factor), and second, that it was "imperative" for the Trustee to defer to the wishes of McAfee as the allegedly sole creditor. The fact that the Trustee did not entirely defer to McAfee required, in McAfee's view, that the Bankruptcy Court deny the Final Fee Application. (D.E. 6 at 20, 22.) These contentions are contrary to the record and the law. The Bankruptcy Court considered this Final Fee

Application under the appropriate legal rubric, including the "results obtained" factor. The legal principles on which McAfee insists simply do not exist. The law neither requires that the "results obtained" factor be given controlling weight, nor does it require a different analysis depending on the number of creditors. Most importantly, the degree of deference to creditors is irrelevant.

1. *The Bankruptcy Court applied the correct legal analysis*

Section 330(a) of the Bankruptcy Code states that professionals retained by a trustee may be awarded "reasonable compensation for actual, necessary services rendered…and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). In determining the amount of reasonable compensation "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including: (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrate skill and experience in the bankruptcy field; and (F) whether the

compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *Id.*

In addition to Section 330(a), controlling authority in the Eleventh Circuit sets forth twelve other factors to consider in evaluating applications for attorneys' fees: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-720 (5th Cir. 1974). In sum, the law permits courts to consider a plethora of factors for a holistic evaluation of a fee application—but degree of deference to creditors is not one of them.

In entering the Final Fee Order, the Bankruptcy Court cited and applied exactly the standards discussed above. (R-309-316). The Trustee submitted an enormously detailed fee application containing itemized billing statements. (R-28-225.) The Bankruptcy Court held a lengthy hearing on that application, including McAfee's objection to it, during which it heard testimony both from the Trustee

and McAfee's long-time counsel. The Trustee testified as to the reasonableness of his and his firm's fees and expenses, and that they were actual and necessary. (T. 111:8-23; 116:11-117:1.) He also testified that taking this case had cost his firm financially. (T. 147:20-148:25.) The Bankruptcy Court evaluated the evidence presented under the prescribed multi-factor tests, looking at the amount of work, rates charged for the work, the reasonableness of the fees, the necessity of the services, the settlement of the Adversary Proceeding, the over $1 million the Trustee recovered on behalf of the estate, and the effect of McAfee's persistent appeals on the availability of funds to distribute to creditors. (R-309-316). The Bankruptcy Court clearly applied the correct legal standard, and its analysis is sound.

2. *McAfee fails to identify any legal error*

a. *The Bankruptcy Court properly applied the "results obtained" factor in evaluating the fee application*

Despite its close adherence to the proper legal analysis, McAfee nevertheless criticizes the Bankruptcy Court's application of the "results obtained" factor. In McAfee's view, the fact that administrative expenses absorbed the majority of the estate means AGG should not be paid (or at least, should be paid a vastly reduced amount). Attempting to create an issue of first impression, McAfee even goes so far as to argue that "the 11th Circuit has never ruled that the lack of actual benefit, or lack of results to the estate need not be considered at all." (D.E. 6 at 21.)

These arguments miss the mark entirely. Neither Appellees nor the Bankruptcy Court have ever contended that the lack of an actual benefit to creditors need not be considered at all. The Bankruptcy Court *did* consider it. (R-315-316.) The Bankruptcy Court engaged in a detailed evaluation of the benefits obtained from AGG's services. Citing various authority, including the Fifth Circuit's decision in *In re Woerner*, 783 F.3d 266 (5th Cir. 2015)—which held that the value of professional services should be considered at the time they were rendered, and not retrospectively based on the actual benefit obtained—the Bankruptcy Court declined to engage in Monday morning quarterbacking of the results of the Adversary Proceeding (especially given the amount of fees the Trustee incurred defending the settlement of the Adversary Proceeding against McAfee's persistent attacks). It concluded that, "although the results obtained remain a factor to be considered when determining the reasonableness of compensation, there is no *per se* bar to awarding compensation that exceeds the distribution to creditors." (R-315.)

Moreover, McAfee *has* received a benefit. The Trustee voluntarily reduced AGG's fees by $186,496.60 so he could return the preference amount of $45,857.67 to McAfee. (R-48; T. 100:5-8, 108:21-109:3, 172:3-174:4.)

While McAfee advocates that the "results obtained" factor should be controlling in determining what AGG may be paid, McAfee does not cite a single

case that holds that the "results obtained" factor is dispositive. It is not. As *Johnson* makes clear, it is merely one of many factors the Bankruptcy Court can, and did, consider. Rather, what McAfee's authority says is that the Bankruptcy Court *may* exercise its discretion to reduce professional fee awards to enable distributions to creditors from estates that would otherwise be absorbed by professional fees. Here, the Trustee voluntarily, and substantially, discounted AGG's fees in McAfee's favor. Nothing in the law required the Bankruptcy Court to discount them further, and there is no legal basis to override the well-reasoned decision of the Bankruptcy Court (who had the benefit of hearing all of the testimony first-hand).

McAfee's insistence that AGG should be penalized because the litigation it pursued at McAfee's urging did not bear the fruit McAfee had hoped for is contrary to the Congressional intent behind the 1978 and 1994 revisions to the Bankruptcy Code's fee provision. *See Woerner*, 783 F.3d at 274-75 (analyzing legislative history of 11 U.S.C. § 330, and stating that "[t]he legislative process therefore strongly suggests that Congress could not have intended the language in § 330 to impose an actual-benefit requirement determinable by a court only at the completion of the case."); *see also* 3 Collier on Bankruptcy ¶ 330.03[3] (Richard Levin & Henry Sommer eds., 16th ed. 2018) ("The economy factor was abandoned under the Bankruptcy Code in favor of the new policy that attorneys engaged in

bankruptcy cases should receive compensation in parity with that received by attorneys performing services in comparable situations. The legislative history of section 330 reflects this significant shift in policy, observing that notions of economy of the estate in fixing fees are outdated and no longer have a place under bankruptcy law.").

In the wake of that change, courts expressly acknowledge that litigation is a gamble, and that sometimes, legitimately incurred administrative expenses, which have priority in bankruptcy, will leave nothing for creditors. *See In re Hambrick*, No. 08-66265, 2012 WL 10739279, at *9 (Bankr. N.D. Ga. Apr. 10, 2012) (rejecting argument that Trustee and his counsel created an estate solely for their own benefit, and stating "a trustee and his professionals are not required to be clairvoyant to get paid something if it turns out that creditors get nothing or next to nothing"); *In re Kristan*, Nos. EP 08-041, 04-20328 JBH, 2008 WL 8664765, at * 6 (B.A.P. 1st Cir. Dec. 15, 2008) (imposing sanctions against party who objected to distributing all estate funds to trustee and his counsel for their fees, leaving nothing for creditors, because administrative expenses were entitled to clear priority and objector failed to raise valid legal or factual basis to dispute challenge to fee award); *In re Marshall*, No. 02-80496-RGM, 2010 WL 3959612, at *38 (Bankr. E.D. Va. Oct. 11, 2010) (approving fee application of trustee and his counsel, and noting that "if counsel reasonably exercises his professional

judgment, he will not be denied his fee solely because the action, in the end, was less successful than initially expected, or indeed, was wholly unsuccessful.").

b. *The Trustee was not required to defer to McAfee, and the degree of his deference is legally irrelevant to the fee application*

McAfee next argues that the Bankruptcy Court erred by failing to hold that McAfee's status as sole creditor "made it imperative that trustee be required to defer to the reasonable wishes of the sole creditor." (D.E. 6 at 21-22.) There is no such legal requirement, and even if there were, the degree to which a trustee defers to a creditor's wishes does not factor into the legal evaluation of a fee application of Trustee's counsel.[8]

While McAfee cites the unremarkable proposition that a trustee owes a fiduciary duty to creditors, the law does not require a trustee to suspend his professional judgment and do the bidding of any creditor, regardless of whether there are one or many creditors. Rather, a trustee "must exercise his continuing professional judgment." *In re Marshall*, 2010 WL 3959612, at *38. A trustee in bankruptcy is not a minion of the creditors, just as the trustee of a trust is not an instrumentality of its beneficiaries. McAfee's wishes about how the Trustee handle

8 It is important to note that McAfee objected to the Final Fee Application, and did *not* object to the Trustee Application. If McAfee took issue with its treatment by the Trustee in the Adversary Proceeding or the underlying bankruptcy case one would have expected him to file an objection to the Trustee Application.

the Adversary Proceeding were just that—wishes.[9] The Trustee was not legally bound to follow them.

In addition, this was *not* a single creditor case. It is undisputed that another creditor, Choice Hotels, filed a proof of claim for $464,286.55 in this matter. (D.E. 9-2 at 14-16; T. 94:11-5, 132:12-133:14.) Although the claim was withdrawn shortly before the Harman Defendant Settlement was approved (R-10 at D.E. 89), the Trustee could not, and did not, ignore the existence of another creditor. (T. 94:11-15, 132:12-20, 136:25-137:5.) Thus, the "sole creditor" argument that is the centerpiece of McAfee's position is itself a fallacy.

More to the point, even if this were a single creditor case (and it was not) the degree of a trustee's deference to creditors is *not* among the many factors a court may consider in evaluating a fee application under *Johnson* or Section 330(a) of the Bankruptcy Code. *See* 11 U.S.C. § 330(a); *Johnson*, 488 F.2d at 717-720. Rather, that factor came into play at a much earlier stage, namely, when the Bankruptcy Court was evaluating whether to approve the Harman Defendant Settlement. *See In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir. 1990) (stating that when a bankruptcy court decides whether to approve a proposed settlement it must consider four factors, including "the paramount interest of the creditors and a proper deference to their reasonable views").

---

[9] We do not discuss here whether McAfee's wishes were "reasonable," which is an entirely separate (though equally irrelevant) matter.

To say McAfee's views regarding the settlement of the Adversary Proceeding were duly considered is an understatement. The Bankruptcy Court held five days of hearings on McAfee's objection to the settlement, and even allowed McAfee to take additional discovery. After the Bankruptcy Court approved the settlement, McAfee moved for reconsideration, and upon losing, appealed to this Court and the Eleventh Circuit. Every federal judge who considered McAfee's position rejected it.

McAfee claims it was error for the Bankruptcy Court to consider McAfee's challenges to the settlement of the Adversary Proceeding—and the fees the Trustee incurred in defending that settlement—in evaluating the Final Fee Application, because it unfairly penalized McAfee. Although McAfee does not cite a single case in this section of its brief, (D.E. 6 at 27), this argument is presumably based on the same incorrect extrapolation that because the trustee has a fiduciary duty to creditors he must blindly accede to the creditors' wishes. As discussed above, this is not the law. In fact, courts have awarded even higher amounts of fees in bankruptcy cases when those fees were incurred defending meritless appeals. *See In re Horne*, 876 F.3d 1076, 1084-85 (11th Cir. 2017) (affirming district court's determination that debtor's fees for work on appeals were reasonable under *Johnson* factors despite being relatively high, in part because the fees were incurred in addressing serial appeals which "unnecessarily complicated" the

litigation). The fact that McAfee chose to pursue meritless appeals, increase administrative expenses, and delay AGG's presentation of their fee application should not be held against AGG.

McAfee has failed to identify any legal error in the Bankruptcy Court's decision. The legal principles that he contends were violated are not actually the law, are inconsistent with modern bankruptcy policy, and should be rejected.

**B. The Record Supports the Bankruptcy Court's Factual Findings**

Just as the Bankruptcy Court applied the correct legal analysis, its factual conclusions are also sound. Under the clear error standard of review, "a strong presumption exists in favor of the trial court's findings of fact….Accordingly, a reviewing court may not reverse the findings of the trier of fact simply because it is convinced it that it would have decided the case differently." *In re Memorex Telex Corporation*, 242 B.R. 826, 830 (D. Del. 1999). As the Eleventh Circuit has observed, it would be especially rare for an appellate court to find clear error in a bankruptcy court's factual evaluation of a fee application. *See In re Westwood Cmty. Two Ass'n, Inc.*, No. 05-13753, 2006 WL 940647, at *1 (11th Cir. Apr. 12, 2006) (citing *In re Hillsborough Holdings Corp.*, 127 F.3d 1398, 1401 (11th Cir. 1997)).

The findings with which McAfee takes issue again revolve around the underlying Adversary Proceeding—specifically, the Trustee's decision not to

retain McAfee's counsel to handle the Adversary Proceeding and to settle the case for a value that McAfee deemed insufficient. Again, these challenges center on the Trustee's perceived lack of deference to McAfee. As stated above, such an inquiry has no place in evaluating a fee application of Trustee's counsel. But even taking McAfee's factual challenges at face value, they are meritless. The Bankruptcy Court's findings are amply supported by the record and there is no error.

1. *The Bankruptcy Court's finding that the Trustee credibly testified as to why he did not retain McAfee's counsel in the Adversary Proceeding is supported by the record*

The Bankruptcy Court found that the Trustee testified credibly as to why he reasonably declined to retain McAfee's counsel as special counsel under 11 U.S.C. § 327(e) to litigate the Adversary Proceeding, identifying three separate reasons. (R-332.) First, the Trustee testified that McAfee's counsel's repeated reference to the claims to be brought in the Adversary Proceeding as a "slam dunk" led the Trustee to believe that McAfee's counsel did not understand their complexity. (T. 95:8-20, 101:9-19, 144:2-7, 145:15-21.) Second, the Trustee testified that he believed that McAfee had a conflict of interest because he was separately pursuing claims that would compete with those of the bankruptcy estate. (T. 101:9-12, 144:8-10.) Third, the Trustee noted that there was long-standing acrimony between the Harmans and the McAfees, and even recalled McAfee's counsel saying McAfee had pursued the Harmans for twelve years and would do so for

twelve more. (T. 101:13-22, 103:4-13, 145:22-25.) The Trustee believed that a desire to pursue prolonged litigation was inconsistent with the proper administration of a bankruptcy estate, and that McAfee's animosity toward Harman was inconsistent with the integrity needed for the bankruptcy process. (T. 103:6-7, 145:22-25, 227:24-229:9.)

Despite the Trustee's detailed explanation of his decision, McAfee nevertheless contends that the Bankruptcy Court's reliance "on just the naked opinion of the Trustee was error." (D.E. 6 at 22.) This contention is puzzling. The Bankruptcy Court is entitled, and indeed, obligated, to weigh the evidence. While McAfee would have preferred that the Bankruptcy Court weigh the testimony of McAfee's counsel more heavily, the Bankruptcy Court did not. That is not error. In fact, it is well-recognized that "a trustee is given wide latitude in selection of the counsel of [his] choice….the Court will not substitute its judgment for that of the trustee." *In re Edwards*, 510 B.R. 554, 556 (S.D. Tex. 2014).

McAfee claims that the Bankruptcy Court failed to consider that the Trustee himself had a conflict of interest in hiring his own firm because he had a duty to scrutinize the bills and keep administrative costs down.[10] (D.E. 6 at 23.) This is

---

[10] McAfee appears to cite *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874 (11th Cir. 1990) and *McMillan v. Joseph Decosimo & Co. (In re Das A. Bowden & Co.)*, 131 F.3d 1459 (11th Cir. 1997) for the sweeping proposition that the Bankruptcy Court's failure to scrutinize the Trustee's decision to hire his own firm in analyzing the Final Fee Application was an abuse of discretion. (D.E. 6 at

another non-starter. Bankruptcy practice widely permits trustees to retain their own firms. *See In re Edwards*, 510 B.R. at 556.[11] Moreover, the Trustee testified that he had reviewed and even reduced his firm's bills – demonstrating the type of judgment one would expect from an independent trustee. AGG also applied to collect fees incurred at their historical billing rates (i.e., the rates in effect at the time services were rendered), rather than their current rates, which the law acknowledges is a permissible adjustment when there is a long delay in payment. *See Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) ("In this circuit, where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates.") (internal citation omitted); *In re Commercial Consortium of Cal.*, 135 B.R. 120, 121 (C.D. Cal. 1991). AGG even voluntarily made another reduction of its fees to make a distribution to McAfee where none was required under the Bankruptcy Code's priority scheme. (R-48; T. 100:5-8, 108:21-109:3, 172:3-174:4.) And, the Trustee

23.) *George Schumann* related to a trustee's failure to promptly return a surplus to the debtor in an involuntary bankruptcy, and extremely abusive litigation by the trustee and the debtor related to requests for a fee enhancement. *McMillan* involved a request that the bankruptcy estate pay accounting fees for services performed for non-debtor parties. The vastly different facts of these cases make them inapposite.

[11] In any event, the time to object to the Trustee's retention of his own firm to represent him was when he applied to do so back in 2011. That ship has sailed.

testified to, and the Bankruptcy Court recognized, a small amount of fees that should be disallowed. (R-296.) McAfee claims that the Bankruptcy Court itself did not carefully scrutinize the Final Fee Application (D.E. 6 at 18), but does not explain what the Bankruptcy Court allegedly missed. Thus, this objection rings hollow.

2. *The Bankruptcy Court properly found that the settlement of the underlying Adversary Proceeding was appropriate.*

Finally, intertwined with the legal analysis of the "results obtained" factor under *Johnson* is the Bankruptcy Court's well-supported factual finding that the Trustee reasonably chose to settle when he did. (R-314.) In that regard, the Trustee testified that all parties to the multi-defendant Adversary Proceeding were hemorrhaging fees due to multi-day evidentiary hearings, and the estate was facing diminishing returns as discovery went on. (T. 173:5-174:7, 175:15-177:6.) The Bankruptcy Court correctly observed that the Trustee's efforts recovered over $1 million for the estate. (R-40, R-345.) Perhaps most tellingly, McAfee's own counsel testified that he realized from the very inception of the Adversary Proceeding *that it was a possibility that McAfee might take nothing if the entire estate were absorbed in administrative expenses*. (T. 223:7-225:13.) Although McAfee continues to urge that the Trustee should have shown McAfee more deference in reaching the settlement, the degree of the Trustee's deference to creditors is not a relevant factor in a fee application analysis, and McAfee's

arguments regarding the validity of the settlement have already been comprehensively vetted and rejected.

In sum, the Bankruptcy Court's factual findings are fully supported by the evidence of record and are not error. McAfee does not present any new factual issue through this appeal, but instead simply rehashed the same evidence already carefully considered and rejected by the Bankruptcy Court. This is not a proper basis for an appeal. *See In re Davis*, No. 03 Civ 7962(LAK), 2004 WL 1336233, at *1 (S.D.N.Y. June 15, 2004) (imposing sanctions on appellant who challenged fee award by bankruptcy court on the ground that the brief "largely confine[d] itself to rehashing the arguments" presented below).

## CONCLUSION

Appellees respectfully request that the Court AFFIRM the Final Fee Order.

## CERTIFICATE OF COMPLIANCE

Pursuant to Bankr. R. App. P. 8015(h), the undersigned certifies that this brief was prepared using Times New Roman 14-point font in compliance with the requirements of Rule 8015, and that the brief contains 6,813 words, excluding the Corporate Disclosure Statement, Table of Contents, and Table of Authorities.

Respectfully submitted this 12th day of December, 2018.

By: */s/ Sean C. Kulka*
Sean C. Kulka, Ga. Bar No. 648919
Theresa Y. Kananen, Ga. Bar No. 478998
ARNALL GOLDEN GREGORY LLP
171 17th Street NW, Suite 2100
Atlanta, GA 30363-1031
Telephone: 404.873.8500
Facsimile: 404.873.8501

*Attorneys for Appellees*

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 12, 2018, the foregoing document was served on counsel of record for Appellant by filing the same using the Court's CM/ECF system.

By: */s/ Sean C. Kulka*

Sean C. Kulka, Ga. Bar No. 648919
ARNALL GOLDEN GREGORY LLP
171 17th Street NW, Suite 2100
Atlanta, GA 30363-1031
Telephone: 404.873.8500
Facsimile: 404.873.8501

*Attorney for Appellees*