IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J. THOMAS MCAFEE, III
in his capacity of Trustee of Marital Trust #2 Under the Will of James T. McAfee, Jr.,

Appellant,

v.

NEIL C. GORDON
TRUSTEE,

Appellee.

CIVIL ACTION FILE
NO. 1:18-CV-4068-TWT

## ORDER

"Jarndyce and Jarndyce drones on."

– Charles Dickens, Bleak House

This is an appeal from an Order of the Bankruptcy Court approving an award of attorney fees and expenses to Arnall Golden Gregory LLP (the "Firm").

### I. Background

On June14, 2011, Joseph H. Harman ("Debtor" or "Harman") commenced Case No.11-67522 by filing his voluntary petition for relief, under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Georgia. Neil C. Gordon was appointed as the Trustee. On September 9, 2011, he applied to the Bankruptcy Court to employ his law

firm as general bankruptcy counsel to the Trustee under 11 U.S.C. § 327(a). There was no objection to that retention application, and the Bankruptcy Court approved it. Two creditors filed proofs of claim in Harman's bankruptcy case. Carolyn McAfee, as Executrix of the Estate of James McAfee filed the largest claim for $5,369,083.73, and Choice Hotels International, Inc. filed a claim for $464,286.55. In examining the financial records in the bankruptcy case, the Trustee learned that within ninety days of the Petition Date, McAfee had garnished $45,857.67 from bank accounts of the Debtor or accounts jointly held by the Debtor and his spouse, Linda J. Harman. Thus, the Trustee filed a preference action against McAfee, and McAfee remitted that money to the Trustee.

By far the biggest litigation in the bankruptcy case was the adversary proceeding the Trustee initiated against Mr. Harman and numerous other defendants on June 13, 2013. McAfee urged the Trustee to pursue these claims, and the Trustee did so, although he believed (as later circumstances would bear out) that they were exceedingly complex. The multi-count complaint (which was twice amended to both drop and add parties, and add additional claims) contained over twenty causes of action against multiple defendants and described a multi-year scheme through which the Debtor had systematically abused the forms of certain businesses and trusts to hide his assets and effect fraudulent transfers.

In January 2015, pursuant to court order, all the parties to the Adversary Proceeding and McAfee participated in an all-day mediation. At the conclusion of the mediation, the Trustee reached a settlement with two defendants, in which McAfee also participated. On June 4, 2015, the Trustee filed a motion seeking Bankruptcy Court approval of that settlement which was granted. However, the bulk of the claims in the Adversary Proceeding remained unsettled, and litigation proceeded with the Harman Defendants.

In June 2015, in the midst of a multi-day evidentiary hearing on a motion to compel filed by the Trustee, the Trustee and the Harman Defendants agreed to a settlement in principle wherein the Harman Defendants agreed to pay the Debtor's bankruptcy estate $675,000 in exchange for a complete release from the Trustee. This settlement was memorialized by a written Settlement Agreement dated July 1, 2015, which the Trustee submitted to the Bankruptcy Court for approval. McAfee was not a party to the Harman Defendant Settlement.

Disappointed with the amount of the Harman Defendant Settlement, McAfee fought to block its approval. On July 21, 2015, McAfee filed a Preliminary Objection and Request for Expedited Discovery and a Continuance. The Bankruptcy Court held hearings on the Harman Settlement Motion and the Settlement Objection on July 28 and July 31, 2015. Following those hearings, the Bankruptcy Court entered a Preliminary Order dated August 4, 2015, which concluded that three of the four factors for approving a compromise and settlement agreement in this Circuit favored approval of the settlement, but

deferred ruling on the Harman Settlement Motion based on "paramount interest of the creditors" factor, and further authorized McAfee to take additional discovery. McAfee took that opportunity, engaging in extensive additional written discovery and depositions. Following McAfee's discovery, the Bankruptcy Court held another three days of evidentiary hearings regarding the Harman Defendant Settlement on September 21, September 22, and October 7, 2015. On October 16, 2015, the Bankruptcy Court entered a Final Order approving the Harman Defendant Settlement and the Harman Settlement Motion. Despite being afforded multiple days of hearing time and additional discovery, McAfee still challenged the Final Settlement Order through a motion for reconsideration, which Chief Judge Mullins denied.

On December 28, 2015, McAfee filed a Notice of Appeal of the Final Settlement Order. After full briefing, on July 28, 2016, Judge Story entered an Order and Judgment affirming the Final Settlement Order. Still not satisfied, McAfee appealed the District Court Order to the Eleventh Circuit. After full briefing and a court-mandated mediation, on March 31, 2017, a three judge panel of the Eleventh Circuit Court of Appeals issued an Opinion and entered a Judgment affirming the District Court Order. McAfee then filed a petition for panel rehearing before the Eleventh Circuit, which was denied on May 10, 2017. McAfee did not appeal the Eleventh Circuit Order to the United States Supreme Court, so the Bankruptcy Court's Final Settlement Order became final and non-appealable.

On November 13, 2013, the Firm filed an interim fee application requesting fees and expenses incurred for the period of June 14, 2011, through August 31, 2013, and on December 23, 2013, the Bankruptcy Court entered an order which awarded the Firm interim compensation in the total amount of $129,121.68. After McAfee exhausted her appeals of the Final Settlement Order, the Trustee filed his Final Report, which included Trustee's Application for Final Compensation and the Firm's Second and Final Application for Compensation. In addition to the Firm's interim compensation, the Final Fee Application sought allowance of fees in the amount of $765,892.40 (out of total fees of $952,389.00) and reimbursement of expenses in the amount of $14,978.13 for the period from September 1, 2013, through March 12, 2018. In order to make a distribution to McAfee, the Firm voluntarily agreed to forego $186,496.60 in fees. On May 22, 2018, McAfee filed an Objection to the Final Fee Application as amended.

On June15, 2018, the Bankruptcy Court held a full-day evidentiary hearing on the Final Fee Application and the Fee Objection. During that hearing, both the Trustee and McAfee's long-time counsel testified. The Trustee testified, among other things, that throughout the case, he had reviewed his firm's bills monthly and had reduced billings to control costs to the estate. He further testified that both the Firm's services and expenses were actual and necessary. He also testified that the Firm was seeking compensation at its historical rates, even though the law would allow them to seek compensation at

current rates as recompense for the long delay in payment. The Trustee testified that the Firm had reduced its fees by $186,496.60 so that the estate could make a distribution to McAfee, returning the $45,857.67 preference that the Trustee had recovered from McAfee. The Trustee also testified that the five-year delay in payment had hurt his colleagues financially and impeded his ability to recruit fellow partners to represent him in other matters.

On cross-examination, McAfee's counsel questioned the Trustee on why he did not retain McAfee's counsel to handle the Adversary Proceeding, especially considering their long pursuit of the Harmans. In response, the Trustee articulated three reasons for his refusal to appoint McAfee's attorneys as special counsel. First, McAfee's counsel's repeated reference to the claims to be brought in the Adversary Proceeding as a "slam dunk" led the Trustee to believe that McAfee's counsel did not understand their complexity. Second, the Trustee believed that McAfee's separate pursuit of overlapping claims against the Harman Defendants created a conflict of interest, in that those claims would compete with those advanced by the bankruptcy estate. Third, the Trustee said he recognized a long-standing "blood feud" between the Harmans and the McAfees, and even recalled McAfee's counsel saying McAfee had pursued the Harmans for twelve years and would do so for twelve more. The Trustee believed that McAfee's dogged pursuit of decades' worth of litigation was inconsistent with the proper administration of a bankruptcy estate, and that

McAfee's animosity toward Mr. Harman was inconsistent with the integrity needed for the bankruptcy process.

McAfee's long-time counsel also testified, taking issue with the fact that McAfee (who was a non-party to the Adversary Proceeding) was apparently not informed of a higher settlement offer from the Harman Defendants made at the January 2015 mediation, which at the time, the Trustee rejected, opting to continue pursuing discovery. McAfee's counsel also complained that the Trustee should have deferred to McAfee in pursuing the Adversary Proceeding. However, when being cross-examined about one of his own emails, McAfee's counsel admitted that he knew from the outset that the Adversary Proceeding could bring about so many professional fees that McAfee, as creditor, might take nothing.

On August 10, 2018, the Bankruptcy Court entered an Order, which, among other things, awarded the Firm $765,892.40 in fees and the reimbursement of $14,978.13 in expenses. The Bankruptcy Court accepted the Trustee's testimony that he had found a small amount of fees had been inadvertently billed by the Trustee as attorney time, rather than Trustee time, and disallowed that amount. However, given the substantial discount the Firm was already voluntarily taking on its fees, the Bankruptcy Court did not further reduce the award. On August 24, 2018, McAfee filed a Notice of Appeal from the Final Fee Order thereby initiating this appeal. On January 28, 2019, I heard approximately two hours of oral argument on the appeal.

## II. Discussion

The standard of review is de novo review of the bankruptcy court's legal conclusions and for clear error of its factual findings.[1] The Bankruptcy Court applied the correct legal standard. It analyzed the Final Fee Application under the factors set forth in 11 U.S.C. § 330(a) as supplemented by the twelve factors articulated in *Johnson v. Georgia Highway Express, Inc.*[2] The Bankruptcy Court evaluated the evidence presented under the prescribed multi-factor tests, looking at the amount of work, rates charged for the work, the reasonableness of the fees, the necessity of the services, the settlement of the Adversary Proceeding, the over $1 million the Trustee recovered on behalf of the estate, and the effect of McAfee's persistent appeals on the availability of funds to distribute to creditors. The Bankruptcy Court clearly applied the correct legal standard, and its analysis is sound.

Despite its close adherence to the proper legal analysis, McAfee nevertheless criticizes the Bankruptcy Court's application of the "results obtained" factor. In McAfee's view, the fact that administrative expenses absorbed the majority of the estate means the Firm should not be paid (or at least, should be paid a vastly reduced amount). Neither Appellees nor the Bankruptcy Court has ever contended that the lack of an actual benefit to

---

1 *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009).

2 488 F.2d 714, 717-720 (5th Cir. 1974).

creditors need not be considered at all. The Bankruptcy Court did consider it. The Bankruptcy Court engaged in a detailed evaluation of the benefits obtained from the Firm's services. Citing various authority, including the Fifth Circuit's decision in *In re Woerner*,[3] which held that the value of professional services should be considered at the time they were rendered, and not retrospectively based on the actual benefit obtained, the Bankruptcy Court declined to engage in Monday morning quarterbacking of the results of the Adversary Proceeding (especially given the amount of fees the Trustee incurred defending the settlement of the Adversary Proceeding against McAfee's persistent attacks). It concluded that, "although the results obtained remain a factor to be considered when determining the reasonableness of compensation, there is no per se bar to awarding compensation that exceeds the distribution to creditors."[4]

McAfee's insistence that the Firm should be penalized because the litigation it pursued at McAfee's urging did not bear the fruit McAfee had hoped for is contrary to the congressional intent behind the 1978 and 1994 revisions to the Bankruptcy Code's fee provision.[5] In the wake of that change, courts expressly acknowledge that litigation is a gamble, and that sometimes,

---

3 783 F.3d 266 (5th Cir. 2015).

4 (R-315).

5 *See Woerner*, 783 F.3d at 274-75 (analyzing legislative history of 11 U.S.C. § 330, and stating that "[t]he legislative process therefore strongly suggests that Congress could not have intended the language in § 330 to impose an actual-benefit requirement determinable by a court only at the completion of the case."); *see also* 3 Collier on Bankruptcy ¶ 330.03[3].

legitimately incurred administrative expenses, which have priority in bankruptcy, will leave nothing for creditors.[6]

McAfee argues that the Bankruptcy Court erred by failing to hold that McAfee's status as sole creditor "made it imperative that trustee be required to defer to the reasonable wishes of the sole creditor." There is no such legal requirement, and even if there were, the degree to which a trustee defers to a creditor's wishes does not factor into the legal evaluation of a fee application of Trustee's counsel. The law does not require a trustee to suspend his professional judgment and do the bidding of any creditor, regardless of whether there are one or many creditors. Rather, a trustee "must exercise his continuing professional judgement."[7] Here, the Trustee was absolutely correct that McAfee's counsel had a conflict of interest that precluded his representation of the bankruptcy estate in the Adversary Proceeding.

Just as the Bankruptcy Court applied the correct legal analysis, its factual conclusions are also sound. Under the clear error standard of review, "a strong presumption exists in favor of the trial court's findings of fact.... Accordingly, a reviewing court may not reverse the findings of the trier of fact

---

6 *See In re Hambrick*, No. 08-66265, 2012 WL 10739279, at *9 (Bankr. N.D. Ga. Apr. 10, 2012)(rejecting argument that Trustee and his counsel created an estate solely for their own benefit, and stating "a trustee and his professionals are not required to be clairvoyant to get paid something if it turns out that creditors get nothing or next to nothing").

7 *In re Marshall*, No. 02-80496RGM, 2010 WL 3959612 at *38 (Bankr. E.D. Va. Oct. 11, 2010).

simply because it is convinced it that it would have decided the case differently."[8] The Bankruptcy Court found that the Trustee testified credibly as to why he reasonably declined to retain McAfee's counsel as special counsel under 11 U.S.C. § 327(e) to litigate the Adversary Proceeding, identifying three separate reasons. First, the Trustee testified that McAfee's counsel's repeated reference to the claims to be brought in the Adversary Proceeding as a "slam dunk" led the Trustee to believe that McAfee's counsel did not understand their complexity. Second, the Trustee testified that he believed that McAfee had a conflict of interest because he was separately pursuing claims that would compete with those of the bankruptcy estate. Third, the Trustee noted that there was long-standing acrimony between the Harmans and the McAfees, and even recalled McAfee's counsel saying McAfee had pursued the Harmans for twelve years and would do so for twelve more. The Trustee believed that a desire to pursue prolonged litigation was inconsistent with the proper administration of a bankruptcy estate, and that McAfee's animosity toward Harman was inconsistent with the integrity needed for the bankruptcy process. The Bankruptcy Court's factual findings are fully supported by the evidence of record and are not error. McAfee does not present any new factual issue through this appeal, but instead simply rehashed the same evidence already carefully considered and rejected by the Bankruptcy Court.

---

8 *In re Memorex Telex Corporation*, 242 B.R. 826, 830 (D. Del. 1999).

## III. Conclusion

The Order of the Bankruptcy Court is AFFIRMED.

SO ORDERED, this 8 day of February, 2019.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge